O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACESETTER INC. d/b/a ST. JUDE MEDICAL CRMD, a Delaware Corporation<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SURMODICS, INC., a Minnesota Corporation<br><br>　　　　Defendant. | CV 11-3964 RSWL(FFMx)<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** |

 After considering the papers and arguments in support of and in opposition to Plaintiff Pacesetter Inc. d/b/a St. Jude Medical CRMD's ("St. Jude" or "Plaintiff") Motion for Summary Judgment and Defendant SurModics, Inc.'s ("SurModics" or "Defendant") Cross-Motion for Summary Judgment, this Court makes the following findings of fact and conclusions of law:

///
///
///

**UNCONTROVERTED FACTS**

1. On December 6, 2002, St. Jude and SurModics entered into a Master License Agreement ["License Agreement"] that licensed St. Jude to use SurModics's patented chemical coatings on St. Jude's products. Holdreith Decl. ¶ 2, Ex. 1; Cruz Decl. ¶3, Ex. A.

2. A true and correct copy of the License Agreement is attached to the Complaint. Holdreith Decl. ¶ 2, Ex. 1; Cruz Decl. ¶3, Ex. A.

3. During the term of the License Agreement, St. Jude made quarterly payments to SurModics. Frankel Decl. ¶ 6.

4. In early 2008, the patents on SurModics's chemical coatings expired, and St. Jude stopped paying royalties in April 2008. Frankel Decl. ¶ 8, Cruz Decl. Ex. D.

5. On May 20, 2009, SurModics did an audit of St. Jude's books to validate St. Jude's royalty payments paid over the course of the License Agreement. Cruz Decl. ¶ 5, Ex. C.

6. On March 23, 2010, SurModics sent St. Jude an audit report that requested additional royalties of over $3 million for products that had been manufactured during the License Agreement but sold after the expiration of SurModics's patents. Cruz Decl. ¶ 6, Ex. D.

///
///

**CONCLUSIONS OF LAW**

1.  Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

2.  Given that patent license agreement are governed by ordinary principles of state contract law, this Court follows the choice of law provisions indicated by the license agreement and interpret the contract based on Minnesota law. <u>Power Lift, Inc. v. Weatherford Nipple-up Systems, Inc.</u>, 871 F.2d 1082, 1085 (Fed. Cir. 1989).

3.  Whether a contract is ambiguous is a question of law. <u>City of Virginia v. Northland Office Props Ltd. P'ship</u>, 465 N.W.2d 424, 427 (Minn. Ct. App. 1991).

4.  Determining whether a contract is ambiguous "depends, not upon words or phrases read in isolation, but rather upon the meaning assigned to the words or phrases in accordance with the apparent purpose of the contract as a whole." <u>Art Goebel, Inc. v. North Suburban Agencies, Inc.</u>, 567 N.W.2d 511, 515 (Minn. 1997).

5.  The mere fact that there is a disagreement "on the interpretation of contract language is not determinative that the contract language is ambiguous." <u>Bank Midwest, Minn., Iowa, N.A. v. Lipetzky</u>, 674 N.W.2d 176, 179 (Minn. 2004).

6.  The Court finds that the License Agreement in

this case is unambiguous.

5. Given that the language of the License Agreement is unambiguous, this Court interprets the language of the License Agreement without examining extrinsic evidence such as course of performance. <u>Hous & Redev. Auth. v. Norman</u>, 696 N.W.2D 329, 337 (Minn. 2005)("Under a contract analysis, we first look to the language of the contract and examine extrinsic evidence of intent only if the contract is ambiguous on its face.").

6. According to patent law, "whoever without authority *makes*, uses, offers to sell, or sells any patent invention within the United States . . . *during the term of the patent therefore, infringes the patent.*" 35 U.S.C. § 271(a)(emphasis added)

7. Once a patent expires, it is "in the public domain and may be made and sold by whoever chooses to do so." <u>Sears Roebuck & Co. v. Stiffel Co.</u>, 376 U.S. 225, 231 (1964).

8. When the language of Paragraph 1(d)(i) of the License Agreement is read in the context of patent law, any product based on SurModics's patents that St. Jude manufactured during the term of SurModics's patents is a "Licensed Product."

9. Attachments B1 and B2 of the License Agreement are unambiguous in only requiring St. Jude to pay "Earned Royalties on Net Sales of . . . Licensed Products."

1    10.  St. Jude's primary obligation for royalties are those that are calculated from the "Net Sales." These "Net Sales" are "the total actual billing for sales of Licensed Products."  Cruz Decl. ¶3, Ex. A at ¶1(h).

    11.  The Court finds that royalties are not owed on Licensed Products simply because they have been manufactured by St. Jude, rather the plain language is explicit in only obligating St. Jude to pay royalties for products that are actually sold.

    12.  Royalties calculated from the "Net Sales" of Licensed Products are only required to be paid by St. Jude to SurModics "during the term of this Agreement." Cruz Decl. ¶3, Ex. A at ¶5.

    13.  Given that royalties are expressly limited in Paragraph 5 to payment during the "term of this Agreement," when read together with Paragraphs 8 and 25, this Court finds that it is plain and unambiguous that St. Jude's obligation to pay royalties ended with the expiration of SurModics's patents.

DATED: October 25, 2011

**IT IS SO ORDERED.**

RONALD S.W. LEW

_____

**HONORABLE RONALD S.W. LEW**

5