O

O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACESETTER INC. d/b/a ST. JUDE MEDICAL CRMD, a Delaware Corporation<br><br>    Plaintiff,<br><br>  v.<br><br>SURMODICS, INC., a Minnesota Corporation<br><br>    Defendant. | CV 11-3964 RSWL(FFMx)<br><br>**ORDER re: Plaintiff's Motion for Summary Judgment [8], and Defendant's Cross-Motion for Partial Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment [20]** |

On June 28, 2011, Plaintiff Pacesetter Inc. d/b/a St. Jude Medical CRMD ("St. Jude") filed the present Motion for Summary Judgment [8]. On July 29, 2011, Defendant SurModics, Inc. ("SurModics") filed the present Cross-Motion for Partial Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment [26]. Both Motions were heard before the Court on October 5, 2011. After considering all of the papers and arguments submitted on these matters, **THE COURT NOW FINDS AND RULES AS FOLLOWS:**

1

The Court hereby **GRANTS** Plaintiff St. Jude's Motion for Summary Judgment.  Furthermore, the Court **DENIES** Defendant SurModics's Cross-Motion for Partial Summary Judgment.

## I. BACKGROUND

St. Jude is a company that designs and manufactures medical devices such as implantable defibrillators, implantable pacemakers, and leads that connect these devices to the heart.  SurModics is a biomedical company that creates new technologies that improve on the efficacy of medical devices.  Relevant in this dispute, SurModics collaborated with St. Jude to develop various chemical coatings that are used on St. Jude's medical devices.  SurModics patented these chemical coatings.

On December 6, 2002, St. Jude and SurModics entered into a Master License Agreement ["License Agreement"] that licensed the use of the patented coatings on St. Jude's products.  In 2008, however, the patents on SurModics's chemical coatings expired, and St. Jude stopped paying royalties shortly after.

On May 20, 2009, SurModics did an audit of St. Jude's books to validate St. Jude's royalty payments paid over the course of the agreement.  On March 23, 2010, SurModics sent St. Jude an audit report that requested additional royalties of over $3 million for products that had been manufactured during the License Agreement but sold after the expiration of SurModics's

patents.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue is one in which the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (2007).

Once the moving party makes this showing, the non-moving party must set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322. The non-moving party is required by Federal Rules of Civil Procedure Rule 56(e)[1] to go beyond the pleadings and designate specific facts

---

[1] The Federal Rules of Civil Procedure were amended on December 01, 2010. Federal Rule of Civil Procedure 56(e) has now been codified as Federal Rule of Civil Procedure 56(c).

3

showing a genuine issue for trial exists. Id. at 324.

## III. ANALYSIS

This Court finds that Plaintiff St. Jude has met its burden for Summary Judgment by making a persuasive showing that the language of the License Agreement does not obligate St. Jude to pay royalties to SurModics for Licensed Products manufactured before but sold after the expiration of SurModics patent. As such, this Court **GRANTS** Plaintiff St. Jude's Motion for Summary Judgment and **DENIES** Defendant SurModics's concurrent Cross-Motion.

As a threshold issue, both Parties agree that the contract includes an express choice of law provision indicating that Minnesota law governs any dispute. Given that patent license agreement are governed by ordinary principles of state contract law, this Court follows the choice of law provisions indicated by the license agreement and interpret the contract based on Minnesota law. Power Lift, Inc. v. Weatherford Nipple-up Systems, Inc., 871 F.2d 1082, 1085 (Fed. Cir. 1989).

According to Minnesota Law, the Court finds that the License Agreement is unambiguous. City of Virginia v. Northland Office Props Ltd. P'ship, 465 N.W.2d 424, 427 (Minn. Ct. App. 1991)(whether a contract is ambiguous is a question of law). Not only do both parties agree that the language of the License Agreement is unambiguous, but the Court finds that the language of the royalty provision unambiguously

provides that St. Jude will pay royalties only on Net Sales of Licensed Products during the term of the agreement.

As will be discussed further below, the meaning of this provision is unambiguous when read in the context of the contract as a whole. Art Goebel, Inc. v. North Suburban Agencies, Inc., 567 N.W.2d 511, 515 (Minn. 1997)(determining whether a contract is ambiguous "depends, not upon words or phrases read in isolation, but rather upon the meaning assigned to the words or phrases in accordance with the apparent purpose of the contract as a whole"). Though it is true that both parties interpret the License Agreement differently, the mere fact that there is a disagreement "on the interpretation of contract language is not determinative that the contract language is ambiguous." Bank Midwest, Minn., Iowa, N.A. v. Lipetzky, 674 N.W.2d 176, 179 (Minn. 2004).

Given that the language of the License Agreement is unambiguous, this Court interprets the language of the contract without examining extrinsic evidence such as the course of performance of the parties.[2] See Hous & Redev. Auth. v. Norman, 696 N.W.2D 329, 337 (Minn. 2005)("Under a contract analysis, we first look to the

---

[2] Because the parties agree that the License Agreement is unambiguous, both parties only argue extrinsic evidence as alternative arguments relevant in the unlikely event the Court found that the language of the License Agreement is ambiguous.

language of the contract and examine extrinsic evidence of intent only if the contract is ambiguous on its face."); City of Virginia, 465 N.W.2d at 427 (Minn. Ct. App. 1991)(holding that a court can interpret an unambiguous contract as a matter of law). Accordingly, the following analysis is a plain language interpretation of St. Jude's obligation for royalties under the contract.

The disputed royalty provision provides in relevant part that "[f]or each license granted herein, [St. Jude] shall pay to SurModics a royalty for each quarter of each calendar year during the term of this Agreement." Cruz Decl. ¶3, Ex. A at ¶5. Moreover, "[e]arned royalties shall be calculated as provided for in Attachments B1 and B2" of the License Agreement, which only obligate St. Jude to pay royalties on "Net Sales" of "Licensed Products." In other words, the parties' License Agreement requires St. Jude to pay SurModics a royalty on the Net Sales of Licensed Product for each quarter of each calendar year during the term of the agreement. Thus, breaking the royalty provision down in parts, in order to understand this provision and apply it to the context of the dispute, the Court interprets the definition of: (1) Licensed Product, (2) Net Sales, and (3) "during the term" of the agreement.

Paragraph 1.d.i of the License Agreement defines royalty bearing "Licensed Products" as: "each of the

separately sold Medical Products . . . which . . . but for the license granted herein, the manufacture, use or sale would infringe . . . Patent Rights." According to patent law, "whoever without authority *makes*, uses, offers to sell, or sells any patent invention within the United States . . . *during the term of the patent therefore, infringes the patent.*" 35 U.S.C. § 271(a)(emphasis added). Thus, when the language of Paragraph 1(d)(i) is read in the context of patent law, any product based on SurModics's patents that St. Jude manufactured during the term of SurModics's patents is a "Licensed Product." St. Jude argues that the products at issue are not "Licensed Products" because they were sold after the patent expired. However, the Court finds this argument without merit as the products at issue were undisputably *manufactured* while SurModics's patents was still valid and hence, fall squarely within the definition provided in Paragraph 1(d)(i).

The next step in understanding this agreement is determining when St. Jude is obligated to pay royalties for Licensed Products. Attachments B1 and B2 of the License Agreement is unambiguous in only requiring St. Jude to pay "Earned Royalties on Net Sales of . . . Licensed Products." In other words, St. Jude's primary obligation for royalties are those that are calculated from the "Net Sales." These "Net Sales" are "the total actual billing for sales of Licensed Products." Cruz

7

Decl. ¶3, Ex. A at ¶1(h). Looking at this definition together with the language in Attachments B1 and B2, the Court finds that royalties are not owed on Licensed Products simply because they have been manufactured by St. Jude, rather the plain language is explicit in only obligating St. Jude to pay royalties for products that are actually sold.

Furthermore, royalties calculated from the Net Sales of Licensed Products are only required to be paid by St. Jude to SurModics "during the term of this Agreement." Cruz Decl. ¶3, Ex. A at ¶5. The Court finds that the language of the License Agreement is clear and unambiguous in defining the "term of the agreement" as ending as soon as SurModics's patents expires. More specifically, Paragraph 8(a) of the license agreement which defines the word "term," states that "[u]nless terminated earlier, each license herein granted . . . shall extend for each Licensed Product so licensed until expiration of the last-to-expire Patent Rights that covers that product." Cruz Decl. ¶3, Ex. A at 8(a). The Court finds that the language in this paragraph is clear in limiting the term of the license and the royalty obligations to the expiration of SurModics's patents.

Moreover, Paragraph 25 of the License Agreement corroborates that Paragraph 8(a) is controlling for the definition of the word "term." In Paragraph 25, the License Agreement specifies that SurModics's obligation

1 to supply patented chemicals to St. Jude ends "after
2 the expiration of the Agreement upon completion of the
3 *full term thereof (as set forth in Paragraph 8(a))*."
4 Cruz Decl. ¶3, Ex. A at ¶25 (emphasis added).  This
5 reference in Paragraph 25 to Paragraph 8(a) confirms
6 that the language of Paragraph 8(a) defines the "term"
7 of the License Agreement as ending when SurModics's
8 patents expires.  Therefore, given that royalties are
9 expressly limited in Paragraph 5 to payment during the
10 "term of this Agreement," when read together with
11 Paragraph 8 and 25, this Court finds that it is plain
12 and unambiguous that St. Jude's obligation to pay
13 royalties ended with the expiration of SurModics's
14 patents.
15    SurModics argues that two other provisions in the
16 License Agreement, Paragraphs 8(b) and 11 allow for a
17 different interpretation of the word "term."  The Court
18 finds this argument without merit.  Paragraph 8(b) only
19 provides that upon the expiration of SurModics's
20 patents and full payment by St. Jude "of any monies due
21 under this Agreement as well as all royalties accrued
22 under [related agreement not at issue], the license
23 with respect to [patented trade secrets] licensed
24 herein for that Licensed Product shall be deemed a
25 fully paid up and non-exclusive license for that
26 Licensed Product."  Cruz Decl. ¶3, Ex. A at ¶8(b).
27    The Court finds that when this paragraph is read in
28 the context of the rest of the agreement (i.e.

9

Paragraphs 8(a), 5, and 25), Paragraph 8(b) is only stating that St. Jude has a continued obligation to pay any royalties that had already been accrued during the Term of the Agreement (Licensed Products that were sold during the Term of the Agreement).  The Court finds that contrary to Defendant's proffered interpretation, Paragraph 8(b) does not create any new obligations for any license after SurModics's patents expired.

    Similarly, Paragraph 11 only provides that after the termination of the License Agreement, SurModics would still have the "right to receive . . . royalties to the extent owed."  From its plain language, Paragraph 11 also does not create any new obligations for royalties after the termination of the agreement. As such, the Court finds that the language of Paragraphs 8(b) and 11 is consistent with an interpretation that St. Jude's obligations to pay new royalties ended with the expiration of SurModics's patents.

    Furthermore, such an interpretation of the Licensed Agreement is consistent with case law.  Under patent law, once a patent expires, it is "in the public domain and may be made and sold by whoever chooses to do so." Sears Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 231 (1964).  Accordingly, case authority dealing with license agreements pertaining to products manufactured before but sold after the expiration of a patent have held that royalties are only warranted when language in

1  license agreements explicitly obligates the licensee to
2  pay for royalties after the patent's expiration.  See
3  AM Int'l, Inc. v. Graphic Mgmt. Assoc., 44 F.3d 572,
4  574 (7th Cir. 1995)(Posner, J.).  In AM Int'l, a
5  license agreement only provided for these type of
6  royalties when the licensed product was ordered by
7  customers **six months** before the expiration of the
8  patent and shipped within five months of the patent's
9  expiration.  Id.  The AM Int'l court, however, found
10 that a licensor was not entitled to royalties for
11 products that were ordered **seven months** before the
12 expiration of the patent but shipped within five months
13 of the patent's expiration.  Id.  This is because "if
14 the parties. . . had wanted [the patent holder] to
15 obtain royalties on all machines shipped before
16 December 31 . . . they could have said so in just those
17 words."  Id. at 576.
18      Similarly, the language of the provision in this
19 case does not contain any language that explicitly
20 obligates St. Jude to pay royalties for products that
21 were manufactured before but sold after the expiration
22 of the patent.  SurModics argues that the absence of
23 such language should instead signal to the Court that
24 royalties are obligated for these products.  However,
25 this Court is in accord with the reasoning in AM Int'l
26 and finds that a licensee is only obligated to pay
27 royalties for these products if the license agreement
28 expressly requires.

As such, this Court finds that the License Agreement does not obligate St. Jude to pay royalties for products sold after the expiration of SurModics's patents.  Therefore, the Court finds that Plaintiff is entitled to summary judgment.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Summary Judgment.  Therefore, the Court **DENIES** Defendant SurModics's Cross-Motion for Partial Summary Judgment.

DATED: October 25, 2011
**IT IS SO ORDERED.**

RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge